# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

FILED

'APR 2 6 2022

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

Case No. _____

Hon. _____

| | |
|---|---|
| Alvin B. Truesdale, on behalf of himself **Plaintiff** | USM No. 09434-058 |
| -vs- | Complaint (Pro Se Prisoner) |
| United States Department of Justice or "United States" **Defendant.** | Judge Demand (Federal Tort) |

## Grievance Sounding In Tort

1. Plaintiff brings this action against defendant, the United States, pursuant to the Federal Tort Claims Act, so that this Court has jurisdiction of the subject matter of this action under 28 U.S.C. §§ 1346, 2671 et seq., and Venue under § 1391(e)(1)(B).

2. The Plaintiff has complied with all prerequisites to a suit under the FTCA in that:

2.

a. On March 23, 2021, the plaintiff timely filed an administrative claim for the matters in dispute in this action in the amount of $1,500,000.00 with the Federal Bureau of Prisons Mid-Atlantic Region Office and Butner Legal Center.

b. The defendant, by and through its agency, the BOP Mid-Atlantic Region Office and BLC denied Plaintiff's administrative claim and on April 28, 2021, mailed its notice of denial, a copy of which is attached to this Complaint as Exhibit-1

c. On or about October 15, 2021, the plaintiff filed his "request for reconsideration" of the defendant's April 28, 2021 denial (Ex-1).

d. The defendant, by and through its agency, Mid-Atlantic Region Office and BLC issued a "final" denial of Plaintiff's administrative claim and settlement and on October 25, 2021, mailed its notice of denial, a copy of which is attached to this Complaint as Exhibit-2.

e. This action was timely commenced following the denial of the administrative claim and settlement (Ex-2).

3.

Respondents

3. Plaintiff also brings this action against defendants, Merrick Garland, Attorney General of the United States; Michael D. Carvajal, Director of the Federal Bureau of Prisons; Thomas Scarantino, Complex Warden, Federal Correctional Complex Butner; Tamara S. Lyn, Warden at Low Security Correctional Institution, Butner North Carolina (LSCI-Butner); Hayward, Associate Warden at LSCI-Butner; Taysha Leslie, Deputy Captain at LSCI-Butner; Jones, Lieutenant at LSCI-Butner; Pamla Davis, Unit Manager at LSCI-Butner; John or Jane Doe LSCI-Butner Riot-Squad Members; Jeffery Allen, Federal Bureau of Prisons Medical Director; John or Jane Doe LSCI-Butner Medical and Clinical Director and Health Services Administrator; all other John or Jane Doe LSCI-Butner Employees or Non-Employees; in their Official capacities, all acting as the agents, servants, and employees of defendant, the United States, in the course of their employment, who along with other agents, servants, and employees of defendant, the United States, known to defendant, the United States, but known or unknown to plaintiff, committed

4.

the acts of injuries as a result of the negligence, wrongful act, or omission of Bureau of Prisons Staff that are set forth more fully below.

Harm

4. As a result of the fault of the defendant(s), by and through their agents, servants, and employees, acting within the scope of their employment, Plaintiff suffered or continue to suffer (1) hurt or trauma or torment of Contracting or the threat of contracting COVID-19 or its more contagious Delta/Omicron variant within the BOP (2) hurt or trauma or torment via COVID-19 (coronavirus) threatening his life or health by being forced to live in overcrowded dormitory or cubical or cell designed for one inmate in the "new" Age of COVID-19 (3) hurt or trauma or torment via severe burning of his eyes (4) violent coughing (5) ringing ears (6) possible eardrum damage (7) hurt or trauma or torment via threat to life or health of more violence to "light it up" (D-A unit) with explosive devices and chemical agents (8) use or threatning use of force (9) personal humiliation (10) disgusting "Special Housing Unit" (SHU) conditions

Case 5:22-ct-03149-FL     Document 1     Filed 04/26/22     Page 4 of 48

# 5.

during the "Covered emergency period" or while already deathly ill from coronavirus or Covid-19 type Symptons (11) hurt or trauma or torment via threat to life or health by permitting Covid-19 positive inmates to be housed in D-A unit (12) hurt or trauma or torment via threat to life or health by refusing to timely test for Covid-19 after exposure to the deadly disease (13) hurt or trauma or torment via threat to life or health via refusing to explain what he was exposed to or contracted or face in the future as a result (14) hurt or trauma or torment via threat to life or health via refusing to explain whether or not Covid-19 effected or caused any damage to any of his vital organs.

a. The administrative record appear to show the defendant concede that plaintiff suffered or continue to suffer from Bureau of Prisons staff tort(s) (1 thru 14). Id.

b. The defendant denied plaintiff's administrative claim(s) and settlement because an unidentified inmate or person did not continue to suffer from the "injuries".

6.

c. On April 28, 2021 and October 25, 2021, the defendant did not deny plaintiff suffered or continue to suffer more than de minimis injury.

d. The defendant somehow reasoned during the administrative process that, because an unidentified entity did not continue to suffer or because the John or Jane Doe LSCI-Butner Riot-Squad members/defendants was or is not BOP employees; it denied plaintiff's administrative claim/settlement offered in good faith.

e. In light of ¶¶4 a-d supra, the FTCA is the only remedy for injuries caused by actions of United States Public Health Services Physicians within the scope of their duties. See e.g., signature page infra; see, e.g., 28 U.S.C. § 1746.

f. If the Court find that the defendant concede the "Harm" cited supra, there would be no need for the demanded "bench trial".

g. The Court is obligated to offer the defense but one mind in which to raise a reasonable response or answer on the merits and therefore filing any

Case 5:22-ct-03149-FL    Document 1    Filed 04/26/22    Page 6 of 48

7.

dispositive motion in the first instance.

h. Because of the serious nature of plaintiff meritorious claims sounding in tort, the background Of the defendants in this case, should make the Court unsympathetic to the defendants.

i. The failure of the defense case may rest on a technical legal argument that the Court should not adopt [after] they rejected plaintiff good faith settlement plea offer. Id. Ex-2.

j. The Court should use an advisory jury on Plaintiff's FTCA claims.

K. The Court should reserve the right to disregard advisory jury findings. See e.g., Signature page infra; see e.g., 28 U.S.C. § 1746.

Misuse of Prison unit and SHU for airborne diseases

5. Defendant concede plaintiff suffered or continued to suffer from Bureau of Prisons staff violations of pertinent BOP Program Statements in regard to "Infectious Disease Management" and

8.

"Patient Care".

a. Plaintiff's injuries resulted from the negligence, wrongful acts or omission of the agents, servants, and employees of the defendant, acting within scope of their employment, as follows: (Continuing wrong)

b. Before Plaintiff arrived at LSCI-Butner, where the action giving rise to this complaint continued to occur, the defendant was aware of the Coronavirus or its Strains.

c. The pneumonia—like illness Covid-19 has been confirmed in all the defendant's prisons and reports of infections or deaths are well known.

d. Whether or not the defendant know the true cause of the Coronavirus is of no moment. The defendant knew enough before March 13, 2020 to were it should have been better Prepared to protect Plaintiff.

e. The defendant and its BOP employees knew before January 1, 2020, that diseases like

9.

the coronavirus or COVID-19 spread exponentially.

f. The defendant(s) devised a plan to send plaintiff along with others to FCL Yazoo City (USP Yazoo).

g. Plaintiff was placed in SHU at LSCI-Butner by defendant(s) from September 9, 2020, and transferred to USP Yazoo on October 19, 2020. (Continuing wrong).

h. The defendant(s) knew about "highly contagious airborn diseases" [before] they implemented BOP P.S. 6190.04(6) and 6031.04(11).

i The defendant(s) knew about "highly contagious airborn diseases" [before] they devised and executed their September thru October 19, 2020 plan.

Denial of informed consent

6. Defendant concede it failed to (1) provide a physician to care for plaintiff when he was sick with coronavirus or COVID-19 type symptoms (2) allow a physician to disclose the condition of plaintiff life or health when he was sick

Case 5:22-ct-03149-FL    Document 1    Filed 04/26/22    Page 9 of 48

10.

with coronavirus or Covid-19 type symptoms and (3) allow a physician to discuss medical diagnosis with plaintiff when he was sick with coronavirus or Covid-19 type symptoms.

a. Plaintiff's injuries ("pain and suffering" etc.) resulted from the negligence, wrongful act, or omission of the agents, servants, and employees of the defendant, acting within scope of their employment, as follows: (continuing wrong)

b. On or about November 3, 2017, the Plaintiff became severely ill with Covid-19 type symptoms.

c. From on or about November 3, 2017 to on or about November 16, 2017, Plaintiff complained to several Durham-A (D-A) unit officers that he was sick and needed medical attention.

d. Plaintiff was bedridden. From on or about November 3, 2017 to November 16, 2017, John or Jane Doe LSCI-Butner medical staff refused to come to D-A unit for a wellness check on Plaintiff.

e. John or Jane Doe LSCI-Butner prison staff

11.

Originally assigned plaintiff to live and sleep in the middle of the floor in D-A Unit Common-area of the housing unit.

f. Defendant(s) John or Jane Doe LSCI-Butner medical or correctional staff forced plaintiff to suffer with COVID-19 type symptoms without receiving any medical attention.

g. Defendant(s) John or Jane Doe LSCI-Butner medical or correctional staff forced plaintiff to suffer with COVID-19 type symptoms while all other D-A unit inmates watched or walked or stood directly over plaintiff all day and night (24/7).

h. When Plaintiff started to take a turn for the worst, D-A unit officer called LSCI-Butner medical department and explain to them that Plaintiff was severely ill and needed immediate medical attention.

i. Defendant LSCI-Butner John or Jane Doe medical staff still refused to come to D-A unit for a wellness check on plaintiff.

12.

j. Defendant LSCI-Butner John or Jane Doe medical staff told D-A unit officer to use another inmate wheelchair and allow another inmate to push plaintiff to the prison medical department.

k. When Plaintiff arrived at LSCI-Butner medical department, Defendant John Doe medical staff took plaintiff temperature.

l. Defendant LSCI-Butner John Doe medical staff told plaintiff that he had a fever and there was nothing else he could do for plaintiff.

m. Defendant LSCI-Butner John Doe medical staff forced plaintiff to leave the prison medical department without receiving any medication, testing, or assistance with returning to his housing unit.

n. Defendant LSCI-Butner John Doe medical staff threaten to put plaintiff in the SHU if he did not leave the medical department.

o. Defendant LSCI-Butner John Doe medical staff threaten to put plaintiff in the SHU after plaintiff complained about being to weak to walk across the

13.

Prison compound and back to DA unit.

P. It took plaintiff about ten minutes to walk back to DA unit after Defendant LSCI-Butner John Doe medical staff put him out the prison medical department without any medical treatment or examination.

q. Defendants(s) Merrick Garland, Michael D. Carvajal, Thomas Scarantino, Tamara S. Lya, Hayward, Taysha Leslie, Jones, Pamla Davis, Jeffery Allen, John or Jane Doe LSCI-Butner Medical or Clinical Director, Health Services Administrator, Other John or Jane Doe LSCI-Butner employees overall negligence, wrongful act, or omission cited supra, represent or continue to represent an inefficient, patchwork, unprepared system to properly deal with or care for plaintiff who has been incarcerated within the BOP since April 19, 1993, but physically near an inmate or staff member infected by a communicable disease or who had actually contracted the Coronavirus or Covid-19.

14.

r. Plaintiff's claims cited supra, was true for LSCI-Butner Prison or medical officials (John or Jane Doe) in 2017 and they stand true for the Defendant(s) in 2022 during the "covered emergency period" provided by the Cares Act of 2020 Sec.12003(b)(2). (Continuing wrong).

s. On or about January 13, 2020, several inmates housed in D-A unit became severely ill with COVID-19 type symptoms. For more than a week, these inmates constantly coughed, sneezed, blew their nose etc., all day and night.

t. On or about January 17, 2020, Plaintiff again fail-sick within the contagious atmosphere of defendant's overcrowded and open dormitory of D-A unit.

u. On or about January 20, 2020 to January 23, 2020, LSCI-Butner medical staff came to D-A unit. They took the temperature of all inmates. Plaintiff and about twenty-five or thirty inmates was immediately taken to the prison's "Special Housing Unit (SHU). We stayed in SHU until our temperatures subsided.

15.

V. Defendant(s) Michael D. Carvajal, Thomas Scaranting, Tamara S. Lyn, Howard, Toysha Leslie, Jones, Pramla Davis, Jeffery Allen, John or Jane Doe LSCI-Butner Medical or Clinical Director, Health Services Administrator, or Other John or Jane Doe LSCI-Butner employees failed or refused to provide the requisite test for Pneumonia, flu, Coronavirus or COVID-19 based on the serious symptoms plaintiff exhibited. This was deliberate indifferent to plaintiff medical needs. (Continuing wrong). Id.

W. Defendant(s) Jeffery Allen, John or Jane Doe LSCI-Butner Medical or Clinical Director, Health Services Administrator, or Other John or Jane Doe LSCI-Butner employees never explained to plaintiff what he contracted or what he face in the future as a result of such exposure. (Continuing wrong). Id.

Unsafe Shelter

7. Defendant concede it failed to provide plaintiff with shelter which does not cause his degeneration or threaten his mental and physical well being during

16.

the "covered emergency period" provided by the Cares Act of 2020 Sec. 12003(b)(2). (continuing wrong). Id.

a. Defendant(s) Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn, Hayward, Taysha Leslie Jones, Pamla Davis, Jeffery Allen, John or Jane Doe LSCI-Butner Medical or Clinical Director, Health Services Administrator, or Other John or Jane Doe LSCI-Butner employees placed Plaintiff in a SHU cell that was dirty and grime. The sink and shower was not properly functioning. There was no hot water. The water that come from the sink was dirty and smelly, all as a result of their negligence, wrongful acts or omission. Id.

b. On or about March 13, 2020 Defendant(s) William P. Barr/Merrick Garland, Michael D. Carvajal, Tamara S. Lyn, Thomas Scarantino Officially certified that they could no longer provide for the life or safety of Plaintiff or all other Federal inmates due to the Coronavirus or Covid-19.

17.

c. Defendant(s) Merrick Garland, Thomas Scarantino, Tamara S. Lyn, Jeffery Allen, John or Jane Doe Medical Director or Clinical Director, Health Services Administrator, Other John or Jane Doe LSCI-Butner employees failed to officially or properly identity plaintiff as a "Vulnerable prisoner" within BOP's prison and medical system due to the Coronavirus or Covid-19.

d. Defendant's "mission statement" is, inter alia, "to seek just punishment for those guilty of unlawful behavior" and, "to ensure the fair and impartial administration of justice for all Americans."

e. Plaintiff was not sentence to death by Coronavirus or Covid-19 or to be injured, traumatize, tormented by the continue threat of such disease or its demise.

f. For Defendant(s) Merrick Garland, Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn, Thysard, Taysha Leslie, Jones, Pamla Davis, Jeffery Allen, John or Jane Doe LSCI-Butner Medical or Clinical Director, Health Services

Case 5:22-ct-03149-FL    Document 1    Filed 04/26/22    Page 17 of 48

18.

Administrator, or other John or Jane Doe LSCI-Butner employees to allow plaintiff to remain under the unending threat of hurt, trauma or torment or torture or death due to the Coronavirus or Covid-19 is not "fair and impartial administration of justice but represent continue injuries.

g. Defendant(s) Merrick Garland, Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn, Hayward, Taysha Leslie Jones, Pamla Davis, Jeffery Allen, John or Jane Doe LSCI-Butner Medical or Clinical Director, Health Services Administrator or other John or Jane Doe LSCI-Butner employees over a sustained period of time, forced plaintiff to live in overcrowded cubical designed for one Inmate.

h. Defendant's decision or resolution that forced plaintiff to live in overcrowded condition continued to create an unhealthy environment for plaintiff regarding preventing spread of the Coronavirus or Covid-19 by: (✱) Social distancing and (✱) Self-isolation.

19.

i. Defendant(s) Merrick Garland, Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn, Hayward, Taysha Leslie, Pamla Davis continued to provide Plaintiff with "shelter" which threaten his physical well being do to unnecessary overcrowding.

j. Defendant(s) Merrick Garland, Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn, Hayward, Taysha Leslie, Pamla Davis continued to threaten Plaintiff well being because their overcrowding inmates undermines Plaintiff's life or safety at the advent of the Coronavirus or Covid-19 pandemic or during the "covered emergency period" provided by the Cares Act of 2020 Sec. 12003(b)(2).

k. Defendant(s) Merrick Garland, Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn, Hayward, Taysha Leslie, Jones, Pamla Davis, or other John or Jane Doe LSCI-Butner employees forced or continue to force Plaintiff to live and sleep in overcrowded conditions or outdated prison facilities in the "new" age of the Coronavirus or Covid-19 is continuing injurious to Plaintiff or additional punishment. Id.

## 20.

l. During the administrative process (Exs-1 and 2), the defendant offer no lucid clarification that would now allow the demand federal "trial judge" or requested "advisory jury" to doubt plaintiff meritorious tort claim(s) as a whole or at least in part or grant a motion to dismiss or for summary judgment within the "covered emergency period" provided by the Cares Act of 2020 at Sec. 12003(b)(2) ("Home Confinement Authority"). See, e.g., signature page infra; See, e.g., 28 U.S.C. § 1746. Id. at 914

m. Defendant knew before October 19, 2020, that (1) plaintiff would be sent to USP Yazoo with about four-hundred (400) other inmates (2) inmates would be housed two to a cell (3) FLC Yazoo City would be short one-hundred thirty-four staff (4) it was highly untensible for USP Yazoo to take on more inmates when the staffing level had not been increased (5) the "Appropriations Act of 2019" provide a course of action for the defendant's employees to follow (6) the inmates that arrived to USP Yazoo City, from other prisons, had already tested positive for Covid-19 (7) from the onset of the pandemic, FLC Yazoo City was at forty (40) percent

21.

affected with the coronavirus (8) by allowing the September 1, 2020, inmates to come into USP Yazoo with the deadly virus and then transferring plaintiff there, put plaintiff at risk (9) the BOP/DSCC September 1, 2020, plan placed and continue to place plaintiff at "risk" due to negligence (10) by prioritizing those working in correctional settings over inmates eligible for home confinement under the Cares Act of 2020 Sec. 12003(b)(2), demonstrate deliberate indifference to the serious risk of harm to plaintiff (11) USP Yazoo did not have enough medical staff to meet the need of the prison's change in the security level (12) USP Yazoo Medical Department was already short of staff as well and was already behind for the duties that need to be filled COVID-19 (13) FCC Yazoo City had no contingency plan for Covid-19 (14) FCC Yazoo City Safety Department failed the Coronavirus "Response Team" unannounced visit from Washington D.C. (15) USP Yazoo Safety Department was not equipped to contain and minimize the spread of coronavirus or Covid-19 within the facility (16) Plaintiff had requested to be released to home confinement under the Cares Act of 2020 Sec. 12003(b)(2) and after defendant(s) Merrick Garland

22.

Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn and other prison officials confession that they could no longer provide for the life or safety of plaintiff and others. Id. (continuing wrong).

D. Defendant(s) Merrick Garland, Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn, Hayward, Tayshar Leslie, Jones, Jeffery Allen, John or Jane Doe LSCI-Butner Medical or Clinical Director, Health Services Administrator or other BOP or DSCC employees are or were negligent or deliberate indifferent to plaintiff's medical needs from on or about September 1, 2020, and continuing thereafter, until the present, within the Federal Bureau of Prisons and before or after their official recognition of the Coronavirus or Covid-19 Pandemic.

Misuse of Force

8. The defendant concede misuse of force against plaintiff by Bureau of Prisons staff.

a. On April 3, 2020, about 4:00 p.m. defendant(s)

23.

Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn, Hayward, Taysha Leslie, Jones, Pamla Davis ordered defendant(s) John or Jane Doe LSCI-Butner Riot-Squad members to ignite explosive devices and some sort of chemical weapon in the prison housing unit (D-A) they housed plaintiff in, as a result of their negligence, wrongful act, or omission or deliberate indifference.

b. On April 28, 2021 (EX-1) the defendant appear to concede that the Defendant(s) John or Jane Doe LSCI-Butner Riot-Squad members are not or were not "Bureau of Prisons Staff.

c. On or about October 15, 2021, plaintiff specifically asked the defendant to clarify, inter alia, their statement that claim "Bureau of Prisons staff" was not involved in the April 3, 2020, assault on D-A unit.

d. On or about October 15, 2021, plaintiff specifically asked the defendant to clarify, inter alia, their statement that claim an

24.

unidentified person or inmate did not continue to suffer from the "injuries as a result of the negligence, wrongful acts, or omission of Bureau of Prisons Staff".

e. On October 25, 2021 (EX-2), the defendant allowed the administrative record to continue to reflect their concession that "Bureau of Prisons staff" was not involved in the April 3, 2020 assault on D-Unit.

S. On October 25 2021 (EX-2), the defendant allowed the administrative record to continue to reflect their concession that plaintiff indeed endured bodily injuries due to defendants) Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn, Hayward, Toysha Leslie, Jones, Pamla Davis, John or Jane Doe LSCI-Butner Riot-Squad members, or Other John or Jane Doe LSCI-Butner employees or non-employees, negligence, wrongful acts or omission and within the scope of their employment during the "Covered emergency period" provided by the Cares Act of 2020 Sec. 12003(b)(2).

25.

g. If defendant(s) cited in Plaintiff supra, are still claiming that defendant(s) John or Jane Doe LSCI-Butner Riot-Squad members or non-employees that made the assault against Plaintiff and others inside a federal Prison was not "Bureau of Prisons staff", based upon their investigation, they found Plaintiff sustained his tort injuries as a result of their negligence, wrongful acts, or omission.

h. The defendant is now obligated to immediately identify the defendant(s) John or Jane Doe LSCI-Butner Riot-Squad members or non-employees for Plaintiff and the Court.

i. Plaintiff suffered or continued to suffer, inter alia, severe burning of his eyes, violent coughing, ringing ears, the threat or possible eardrum damage, foaming from the mouth and nose.

j. The explosive devices and chemical agent was unleashed in the prison housing unit of D-A by defendant(s) Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn, Hayward, Toysha Leslie,

26.

Pamla Davis, John or Jane Doe LSLI-Butner Riot-Squad members, or Other John or Jane Doe LSLI-Butner employees.

K. On April 3, 2020, and thereafter no prison official at any time took disciplinary action against Plaintiff for not being in his assigned area during the 4:00 p.m. Count.

l. On April 3, 2020, and thereafter there was no Code 321 ("Interfering with the taking of Count") violation written by any defendant.

m. During the "Covered emergency Period" (allowed by the Cares Act of 2020, defendant(s) ① Merrick Garland, ② Michael D. Carvajal, Thomas Scarantino, Tamara S. Lynn, ③ Howard, Tonya Leslie Jones, Pamla Davis, John or Jane Doe LSLI-Butner Riot-Squad members, or Other John or Jane Doe LSLI-Butner employees disportianal force was the cause of Plaintiff injuries.

n. During the "Covered emergency Period" (allowed by the Cares Act of 2020, the defendant(s) cited in ¶¶ m supra, inflicted physical or

27.

Psychological pain or terror on plaintiff.

O. During the "covered emergency period" allowed by the Cares Act of 2020, the defendant(s) cited in ¶ m supra.; Offered plaintiff no reason or Penological justification for inflicting physical or psychological pain or terror upon him on April 3, 2020.

P. During the "covered emergency period" allowed by the Cares Act of 2020, the defendant(s) cited in ¶ m supra.; Force was not justified by any legitimate prison management need or was completely out of proportion to that need.

q. On April 3, 2020, the defendant(s) cited in ¶ m supra.; Force appear to have been used to punish plaintiff or others housed in D-A unit for asking them complexed questions surrounding the coronavirus or COVID-19 or the Cares Act of 2000 sec. 12003 (b)(2).

r. On April 3, 2020, the defendant(s) cited in ¶ m supra.; Force appear to have been used in retaliation against plaintiff or others for asking

28.

them complexed questions surranding the Coronavirus or Covid-19 or the Cares Act of 2020 Sec. 12003(b)(2).

5. On April 3, 2020, the defendant(s) cited in (A) in supra, force appear to have been used to punish or retaliate against plaintiff or others for asking them complexed questions surrounding their arbitrary or capricious operational procedures that fell or continued to fall well short of releasing plaintiff or others to home confinement under the Cares Act of 2020, as "Vulnerable Prisoners" due to medical reasons or defendant's outdated prisons or medical facilities in the "new" age of the coronavirus or Covid-19.

Misuse of force

9. The defendant concede misuse of force against plaintiff by Bureau of Prisons Staff.

a. During the "covered emergency period" or in a continuing pattern of unprovoked assault or deliberate indifference or unnecessary or excessive use of force against plaintiff, on April 16, 2020, at about 8:30 p.m., defendant Jones appearing

29.

to act on her own authority or on defendant(s) Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn, Hayward, Toysha Leslie continuing instructions, returned to D-A unit with a host of defendant John or Jane Doe LSCI-Butner Riot-Squad members, or Other John or Jane Doe LSCI-Butner employees in full tactical-gear and with guns drawn, as a result of their negligence, wrongful act, or omission.

b. Defendant(s) Jones, John or Jane Doe LSCI-Butner Riot-Squad members, or Other John or Jane Doe LSCI-Butner employees entered D-A unit hollering, screaming, and ordering inmates in or out of their cubicals or showers in a chaotic manner, at gun-point.

c. During the "covered emergency period" allowed by the Cares Act of 2020, defendant(s) Merrick Garland, Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn, Hayward, Toysha Leslie, Jones, Pamla Davis, John or Jane Doe LSCI-Butner Riot-Squad members, or Other John or Jane Doe LSCI-Butner employees offered Plaintiff no reason or penological justification for infliction of physical

Case 5:22-ct-03149-FL    Document 1    Filed 04/26/22    Page 29 of 48

30.

or psychological pain or terror or suffering upon him on April 16, 2020.

d. During the "covered emergency period" allowed by the Cares Act of 2020, the defendant(s) cited in ¶¶ a-c supra., offer no logical reason for their band of thug-like conduct.

e. During the "covered emergency period" allowed by the Cares Act of 2020, the defendant(s) cited in ¶¶ a-c supra., offer reason for their band of thug-like conduct was because Plaintiff or others continued to request to be released to home confinement under the Cares Act of 2020 Sec. 12003(b)(2).

f. At the end of the defendant(s) cited in ¶¶ a-c supra., dangerous, violent or unprovoked assault on DTA unit, the apparent Riot-Squad leader (defendant) threaten to "light it up" (DTA unit) with explosive devices or chemical agents if they had to come back.

g. On April 16, 2020, the defendant(s) cited in ¶¶ a-c supra., offered Plaintiff no explanation

31.

as to what he or another person did wrong or exactly why the continuing use or threating use of force was necessary during the Coronavirus or COVID-19 emergency lockdown or pursuant to the Cares Act of 2020 Sec. 12003(b)(2).

h. During the administrative process (Exs-1a,1a2), the defendant offer no lucid clarification that would now allow the demand federal "trial judge" or the requested "Advisory Jury" to doubt Plaintiff meritorious tort claims as a whole or at least in part or grant a motion to dismiss or for summary judgment within the "Covered emergency period" Provided by the Cares Act of 2020 at Sec. 12003 (b)(2)L ("Home Confinement Authority").

Exposure to communicable disease

10. Defendant concede one or more Bureau of Prisons staff exposed Plaintiff to other inmates who contracted an airborne disease or COVID-19.

a. During the "Covered emergency period", on April 27, 2020 defendant(s) Michael D. Carvajal, Thomas Scarpantino, Tamara S. Lynn, Hayward,

32.

Taysha Leslie, Jones, Pamla Davis, Jeffery Allen, John or Jane Doe LSCI-Butner Medical or Clinical Director, Health Services Administrator, or Other John or Jane Doe LSCI-Butner employees admitted an inmate name Jeremy Lane (Reg. No. 66588-056) to D-A unit, as a result of their negligence, wrongful acts, or omission.

b. On April 27, 2020, the defendant(s) cited in 97 a supra, should have known that inmate Jeremy Lane (Reg: 66588-056) had contracted the coronavirus or Covid-19 prior to being committed to the BOP or during his committal to the BOP or LSCI-Butner.

c. On April 27, 2020, the defendant(s) cited in 97 a supra, exposed plaintiff to the deadly disease of the coronavirus or Covid-19 by admitting inmate Jeremy Lane (Reg: 66588-056) to D-A unit and housing him beside plaintiff.

d. During the "covered emergency period", the defendant(s) cited in 97 a supra, failed to properly screen inmate Jeremy Lane (Reg: No. 66588-056) to ensure that it was effectively protecting plaintiff

life and safety.

e. During the "Covered emergency period", the defendant(s) cited in 9) a supra., failed to properly screen inmate Jeremy Lane (Reg: No. 66588-056) to ensure the Bureau health (inside D-A unit), safety and security standards are met.

f. After the defendant(s) cited in 9) a supra., failed to ensure Jeremy Lane (Reg: No. 66588-056) was properly cleared by LSCI-Butner Medical Department and assigned to general population, on April 29, 2020, LSCI-Butner prison staff came and removed him (Jeremy Lane) from D-A unit.

g. The defendant(s) cited in 9) a supra., allowed Jeremy Lane (Reg: No. 66588-056) to be housed inside D-A unit for two-and-a-half days (2½) days with the coronavirus or Covid-19.

Exposure to communicable disease

11. On May 28, 2020, defendant(s) Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn, Hayward, Taysha Leslie, Jones, Pamela Davis,

34.

Jeffery Allen, John or Jane Doe LSCI-Butner Medical or Clinical Director, Health Services Administrator or other John or Jane Doe LSCI-Butner employees continued to expose plaintiff to the deadly coronavirus or Covid-19 disease, as a result of their negligence, wrongful act or omission.

a. The defendant concede one or more Bureau of Prisons staff exposed plaintiff to other inmate(s) who contracted an airborne disease or Covid-19.

b. On May 28, 2020, during the "covered emergency period" provided by the Cares Act of 2020 Sec. 12003(b)(2), the defendant(s) cited in ¶9 a supra, conducted "internal movement" during the height of the Covid-19 pandemic or within LSCI-Butner.

c. During the defendant(s) cited in ¶9 a supra, "internal movement" at LSCI-Butner they transported at least thirty-eight (38) "new" inmates from Grandville-B housing unit to D-A unit [W]ithout properly testing them for the deadly coronavirus or Covid-19 disease.

35.

d. During the "covered emergency period", defendant(s) cited in (9) a supra., forced D-A unit to become overcrowded.

e. During the "covered emergency period", defendant(s) cited in (9) a supra., forced Plaintiff to live in overcrowded conditions during the Corona-19 Pandemic.

f. During the "covered emergency period", defendant(s) cited in (9) a supra., forced plaintiff to live in overcrowded conditions without properly testing all inmates coming into D-A unit before hand.

g. On June 9, 2020, the defendant(s) cited in (9) a supra., was forced to remove several inmates from D-A unit who was originally brought there on May 28, 2020, from Grandville-B unit due to contracting the coronavirus or Covid-19 before or after being moved to D-A unit.

h. On June 9, 2020, the defendant(s) cited in (9) a supra., was forced to remove several inmates that was originally housed in D-A unit due to contracting the coronavirus or Covid-19 before or after

36.

Grandville-B unit inmates moved to D-A Unit.

i. On or about June 9, 2020, the defendant(s) cited in 09) a supra., conceded that all those inmates removed from D-A unit tested positive for the Coronavirus or Covid-19 or SARS-Cov-2.

j. On June 9, 2020, the defendant(s) cited in 09) a supra., claimed that they was removing all "positive" inmates from D-A unit.

k. On June 9, 2020, the defendant(s) cited in 09) a supra., allowed at least two(2) or more "positive" inmates to stay in D-A unit among what they described as "negative" inmates from June 9, 2020 to June 22, 2020.

l. The decision of the defendant(s) cited in 09) a supra., to allow at least two(2) or more "positive" inmates to stay in D-A unit among "negative" inmates was a continuing assault on Plaintiff or D-A unit.

m. The decision of the defendant(s) cited in 09) a supra., to allow at least two(2) or more

Case 5:22-ct-03149-FL    Document 1    Filed 04/26/22    Page 36 of 48

37.

"positive" inmates to stay in D-A unit among "negative" inmates was continuing deliberate indifference to plaintiff life or safety.

o. On June 22, 2020, the defendant(s) cited in 9 a supra., removed inmates Jacob Breslin (Reg: No. 70626-018) and Jermaine Jones (Reg: No. 15020-088) from D-A unit because they tested "positive" for coronavirus or Covid-19 on or about June 1, or 2, 2020.

O. The defendant(s) cited in 9 a supra., conduct of deliberate indifference at the very least, lie somewhere between the poles of negligence at one end and purpose or knowledge at the other.

P. After the Jacob Breslin (Reg: No 70626-018) and Jermaine Jones (Reg: No. 15020-088) exposure, the defendant(s) cited in 9 a supra., failed to timely order additional testing for plaintiff or others still housed in D-A unit.

q. The defendant(s) cited in 9 a supra., constantly exposed plaintiff to viral infections

38.

without explaining to him what he had contracted
or been in close contact with or what he face
in the future as a result.

r. The defendant(s) cited in ¶2a supra, forced
or continued to force plaintiff to live and sleep in
overcrowded conditions.

s. The defendant(s) cited in ¶2a supra, forced
or continued to force plaintiff to live and sleep in
outdated prison facilities in the "new" age of the
Coronavirus or COVID-19 was continuing injurious
to plaintiff or additional punishment for plaintiff.

t. During the administrative process (EXs-1 and 2),
the defendant(s) cited in ¶2a supra, offer no lucid
clarification that would now allow the demanded
federal "trial judge" or the requested "Advisory Jury"
to doubt plaintiff's meritorious tort claims as a
whole or at least in part or grant a motion to
dismiss or for summary judgment within the "covered
emergency period" provided by the Cares Act of
2020 at Sec. 12003(b)(2)("Home Confinement
Authority"). See, e.g., Signature page infra; see, e.g.
28 U.S.L. § 1746. Id.

Case 5:22-ct-03149-FL    Document 1    Filed 04/26/22    Page 38 of 48

# 39.

u. Plaintiff has and continue to be a "model prisoner". As a result, the defendant(s) cited in ¶ a Supra, acknowledgment of Plaintiff exemplary behavior and underlining medical conditions was rewarded with the meritorious tort claims complained of herein.

Exposure to Communicable disease

12. The defendant concede one or more Bureau of Prisons staff exposed plaintiff to Other inmate(s) who contracted an airborne disease or COVID-19.

a. Beginning September 1, 2020, and continuing thereafter, until the present, Within the Federal Bureau of Prisons or Designation and Center Computation Center (DSCC), defendant(s) Merrick Garland, Michael D. Carvajal, Thomas Scarantino, Tamara S. Lup, Hayward, Toysha Leslie, Jones, or Other John or Jane Doe LSCI-Butner employees or DSCC employees deliberately exposed plaintiff to the coronavirus or COVID-19 infected inmates, as a result of their negligence, wrongful acts, or omission. Id. (continuing wrong).

Case 5:22-ct-03149-FL    Document 1    Filed 04/26/22    Page 39 of 48

40.

b. The defendant(s) cited in ¶ a supra, devised a plan to send plaintiff along with others to FCC Yazoo City (USP-Yazoo).

c. Plaintiff was placed in SHU at LSCI-Butner by the defendant(s) cited in ¶ a supra, from September 9, 2020, and transferred to USP Yazoo on October 19, 2020. Id.

d. The defendant(s) cited in ¶ a supra, knew beforehand that (1) Four-hundred (400) inmates would be sent to USP Yazoo (2) inmates would be double celled (3) FCC Yazoo City would be short one-hundred thirty-four staff throughout the complex (4) it was highly unfeasible for USP Yazoo to take on more inmates when the staffing level had not been increased (5) staff that work in other departments (non-custody) outside of being an officer has and continue to be removed from their hired positions and placed in Officer (custody) positions (6) the "Appropriations Act of 2019 provide a course of action for the defendant(s) to follow (7) the inmates that arrived to USP Yazoo City, from other prisons, had already tested positive for Covid-19 (8) from the onset of

41.

the pandemic, FCC Yazoo City was at Forty (40)
Percent affected with the Coronavirus (9) by allowing
the September 1, 2020, inmates to come into USP
Yazoo with the deadly virus, it not only put the
inmate population at risk, but staff as well (10)
the BOP/DSCC September 1, 2020, plan placed and
continue to place both the inmate population and Staff
at "risk" by "force" due to negligence to ensure
our safety (11) USP Yazoo did not or do not have
enough medical staff to meet the need of the
Prison's change in the Security level (12) USP Yazoo
medical department was already short of staff
as well and was already behind for the duties that
need to be filled. COVID-19 (13) FCC Yazoo City
has no contingency plan for COVID-19 (14) USP
Yazoo's Safety Department had just failed the
Corona Virus Response Team's unannounced visit
from Washington D.C. (15) the Corona Virus Response
Team comprised of Regional Medical Professionals
who came to review the procedures at FCC Yazoo City
implemented to ensure USP Yazoo were following proper
protocol in decreasing the spread of the Coronavirus
(16) USP Yazoo Safety Department was not equipped
to contain and minimize the spread within the
facility (17) USP Yazoo was not equipped to

Case 5:22-ct-03149-FL    Document 1    Filed 04/26/22    Page 41 of 48

42.

decrease the potential spread from hundreds of individuals who come from across the country into USP Yazoo (18) Plaintiff requested that defendant Tamara S. Lyn or other DOJ employees intervene on his behalf [after Congress set home confinement release on March 27, 2020 and continuing thereafter during the "covered emergency period", pursuant to the Cares Act of 2020 sec. 12003(b)(2), based on defendant(s) Merrick Garland, Michael D. Carvajal, Thomas Scarantino, Tamara S. Lyn and other prison officials concessio that they could no longer provide for the life or safety of the inmate population. (Continuing wrong).

e. The defendant(s) cited in ¶ a supra., knew about "highly contagious airborn diseases" [before] they implemented BOP P.S. 6190.04 (6), 6081.04(11) and [before] they devised and executed their September 1, 2020 thru October 19, 2020 Plan.

f. The defendant(s) cited in ¶ a supra., or defendant(s) Jeffery Allen, John or Jane Doe LSCI-Butner Medical or Clinical Director, Health Services Administrator, or other BOP or DSCC employees

43.

are or were negligent or deliberate indifferent to Plaintiff's medical needs from on or about September 1, 2020, and continuing thereafter, until the present, within the Federal Bureau of Prisons or before or after their official recognition of the coronavirus or COVID-19 pandemic.

g. From on or about September 1, 2020, and continuing thereafter, until the present, within the Federal Bureau of Prisons, the defendant(s) cited in ¶ a supra, constantly exposed Plaintiff to viral infections or coronavirus or COVID-19.

h. From on or about September 1, 2020, and continuing thereafter, until the present within the Federal Bureau of Prisons, the defendant(s) cited in ¶ f supra, never explained to Plaintiff what he contracted or what he faced in the future as a result of such exposure. (continuing wrong).

Claims for Relief

13. As a direct and proximate result of the combined negligence, wrongful act, or omission

44.

of defendant's agents, servants, and employees, plaintiff has suffered or continue to suffer (1) torment or threat of contracting COVID-19 or its more contagious Delta, omicron etc., variant within BOP's outdated prison or medical facilities (2) torment or threat to his life or health due to subjection to deadly infection (3) Severe burning of his eyes due to chemical weapons (4) Violent coughing due to chemical weapons (5) Foaming at the mouth and nose due to chemical weapons (6) Painful ringing ears due to explosive devices (7) Possible eardrum damage due to explosive devices (8) Personal humiliation due to LSCI-Butner Riot-Squad assaults (9) disgusting SHU conditions during medical emergency, and the "covered emergency period" provided by the Cares Act of 2020 Sec. 12003(b)(2) (10) torment or threat to his life, health or safety of more violence, to "light it up" (D-A Unit) by LSCI-Butner Riot-Squad (11) Use or threatening Use of force by LSCI-Butner Riot-Squad (12) torment or threat to life or health by permitting positive COVID-19 inmate(s) to be housed in the same unit (13) torment or threat to life or health by failing to timely test for COVID-19 after being exposed to the deadly disease

Case 5:22-ct-03149-FL    Document 1    Filed 04/26/22    Page 44 of 48

45.

(14) torment or threat to life or health or safety by failing to explain what he was exposed to or contracted or face in the future as a result

(15) failure to explain whether or not Covid-19 effected or caused damage to any of his vital organs (continuing wrong), and has, therefore, become as a direct and proximate result, known or unknown present or future harm sounding in tort, possible disabled, unemployable, organ damage, or death by long term Covid-19 complications. When suffering or injured Plaintiff was/is within the custody and control of the defendants(s). As a result of these injuries, plaintiff was not properly examined by any of the defendants(s) or taking to a hospital to date of complaint, suffered pain of mind and body, possible permanent harm or complications or disability and vital organ damage, and has been damaged in the past in the aggregate sum certain of $1,500,000.00.

a. Plaintiff reserved his right to request an increase amount in damages based upon new evidence or information that was not yet reasonably discoverable when he presented his administrative claim or this meritorious judicial tort complaint;

46.

Or upon events that occurred after he filed his claim(s). See Exhibit-3.

b. The administrative record show that Plaintiff reserved the following: If Plaintiff "has or should ever contract or test positive for the Coronavirus or Covid-19 while he is incarcerated within Federal Bureau of Prisons outdated prison or medical facilities, his "sum certain" shall increase to $5,000,000.00 U.S. dollars, and a maximum of $80,000,000.00, U.S. dollars, if Mr. Truesdale should perish as a result or in addition to the same and payable to his estate forthwith". (continuing wrong). Id. at Ex-3.

c. As a result of these injuries, plaintiff in the future will or may incur medical expenses, possible lost of earning of an undetermined amount, will or may suffer continue pain of mind and body, and will or may be permanently disabled if he lose or suffer vital organ damage, and suffer a substantial loss of earning capacity, all in a total sum certain of at least $10,000,000.00. Id. at Ex-3.

47.

### Prayer

Plaintiff requests (1) an opportunity to conduct discovery before the Court entertain any dispositive motion, i.e., motion to dismiss or for Summary Judgment (2) that the Court grant his demand for a bench trial (3) that the Court impanel an "Advisory Jury" of its own initiative (4) that the Court order its Clerk of Court to schedule this matter for trial for a time certain and (5) that the Court render Judgment against the defendant:

A. In the sum to be shown at trial, but in no event less than $1,500,000.00;

B. Including whatever pre- and post judgment interest may be allowed by law; and that

C. Plaintiff be awarded cost of suit.

D. As such, this Affidavit was signed by me on April 15 , 2022, at United States Penitentiary Yazoo Mississippi.

SUBSCRIBED AND SWORN BY ME ON

48.

APRIL 15 , 2022, AT USP YAZOO CITY-MISSISSIPPI.

I, Alvin B. Truesdale declare under penalty of perjury that each of the facts set-out in this sworn declaration is true and correct as to my own personal knowledge, and if called as a witness to testify in this matter, I could and would competently testify to each of the facts set-out in this sworn declaration.

If the defendant(s) move for summary judgment, this verified complaint is hereby presented to the Court for review and consideration as if it were an affidavit in opposition to the motion as a matter of law. Id. at Ex-3.

Signed pursuant to 28 U.S.C. § 1746.

Alvin B. Truesdale
ALVIN B. TRUESDALE
Plaintiff/Affiant

DATED: April 15 , 2022.

CC: